SCOTT N. SCHOOLS (SCSBN 9990)
United States Attorney
JOANN M. SWANSON (SBN 88143)
Chief, Civil Division
ELLEN M. FITZGERALD (NY 2408805)
Assistant United States Attorney
450 Golden Gate Avenue, 9th Floor
San Francisco, California 94102-3495
Telephone:     (415) 436-7241
Facsimile:     (415) 436-6748
E-mail:          ellen.fitzgerald@usdoj.gov

Attorneys for Defendant United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BRIGID BAILEY, individually as the Personal Administrator for the Estate of Joseph Paul Bailey, Deceased, and the Guardian Ad Litem for Samuel P. Bailey, Paul F, Bailey, and Meghan Bailey,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. C 07-2655 JSW<br>**E-FILING CASE**<br><br><br>**DEFENDANT'S MOTION TO TRANSFER VENUE TO THE EASTERN DISTRICT OF CALIFORNIA**<br><br><br>Date:     November 9, 2007<br>Time:    9:00 am<br>Ctrm:   2, 17th Floor |

PLEASE TAKE NOTICE that on Friday, November 9, 2007, at 9:00a.m., in the Courtroom of the Honorable Jeffrey S. White, United States District Judge, Courtroom 2, 17th Floor, United States District Court, 450 Golden Gate Avenue, San Francisco, California, the United States of America, represented by the United States Attorney for the Northern District of California, through Ellen M. FitzGerald, Assistant United States Attorney, will move the Court to transfer venue in this case to the Eastern District of California under 28 U.S.C. § 1404(a).  The motion will be based on this motion, the evidence submitted therewith, the arguments of the parties, and such other matters as may be presented to or considered by the Court.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

This tort case, brought under the Federal Tort Claims Act, alleges wrongful death and negligence with respect to the death of James Bailey, plaintiff Brigid Bailey's husband, who died while rafting on the Yuba River near Grass Valley, California. Bailey claims that the Army Corps of Engineers failed adequately to warn her husband of the Daguerre Dam, which crosses the Yuba River. Bailey rafted over the Daguerre Dam and drowned.

The facts of this case have no connection to this forum. All of the relevant witnesses, documents, and other evidence – with the exception of the plaintiff – reside in the Eastern District of California. Critical non-party witnesses who reside in the Eastern District of California are outside the subpoena power of this Court. The Eastern District of California also has an interest in adjudicating this dispute, as it involves property in that district and allegations of negligence against Army Corps of Engineers employees who work there.

The critical factors relevant to venue in this case favor its transfer to the Eastern District of California.

## STATEMENT OF FACTS

Plaintiff Brigid Bailey, was married to James Bailey when he died in a rafting accident on the Yuba River on May 29, 2005. Complaint at ¶1. The other male plaintiffs are the Baileys' sons, who survived the rafting accident. *Id*. at ¶9. The other female plaintiff is Bailey's stepdaughter, who was not present at the accident. *Id*. at ¶5. The Baileys allege that the Army Corps of Engineers' negligence caused the accident that killed Mr. Bailey because the Army Corps of Engineers failed to warn of the dangers posed by the Daguerre Dam sufficiently to prevent the Baileys from rafting over it. *Id*. at ¶18.

Bailey lives in Martinez, California, which is within the Northern District of California. Complaint at ¶1.

The Daguerre Dam crosses the Yuba River between Grass Valley and Marysville, California, in the Eastern District of California. Decedent James Bailey and his sons set out in a small raft at the Highway 20 bridge over the Yuba River, and floated downstream to the site of

1    their accident at Daguerre Dam.  *Id*. at 13.

2         The United States intends to rely on several third-party witnesses in this case, all of

3    whom reside in the Eastern District of California, apparently outside of this Court's subpoena

4    power.  The United States expects that Pat Marble, Clay Swanson, and Lewis Ashcraft – all of

5    whom worked at the Sycamore Ranch Campground, where the Baileys began their trip – will

6    testify that they warned Mr. Bailey repeatedly against rafting on the Yuba River that day, due to

7    high water levels from Spring flooding and very low water temperatures, and the danger posed

8    by the Daguerre Dam.  Decl. of Phyllis Svetich, Exhibits A, B, C, and D.  They will also testify

9    that the Baileys disregarded their warnings and set out in a flimsy, swimming-pool style raft.  *Id.*.

10   The witnesses will testify that they warned the Baileys about rafting without life vests, but that

11   the Baileys chose to set out without life vests anyway.  *Id*.

12        One or more of these witnesses will testify that Mr. Bailey told them that he knew about

13   Daguerre Dam, but intended to pull his raft out of the river before they reached it.  *Id*., Exhibit A.

14        Clay Jellison, a professional fishing guide in the area, will testify that he saw the Baileys

15   in their raft shortly after they began their trip.  *Id*., Exhibit C.  He will testify that they seemed

16   completely out of control, and that the Baileys seemed to enjoy the fact that their raft seemed to

17   be continually on the verge of capsizing.  *Id*.  Jellison noticed that the Baileys were riding in a

18   flimsy raft, that they wore no life vests, and that the raft rode so low in the water that he was

19   surprised to hear that the Baileys made it as far downstream as Daguerre Dam.  *Id*.

20        The United States also intends to rely on at least some of these third-party witnesses, in

21   addition to its own witnesses, to testify that the Army Corps of Engineers posted signs warning

22   about the dam at the Highway 20 bridge where the Baileys began their raft trip.  These witnesses

23   may testify that the Army Corps of Engineers posted other signs warning about the dam along

24   the shores of the Yuba River, but that these signs had been washed away by recent flooding,

25   which also prevented their replacement.

26        The United States intends to introduce evidence that the Army Corps of Engineers issued

27   a press release, several days before the Baileys' accident, warning the public to stay off the Yuba

28   River below the Highway 20 crossing because the water was still turbulent and cold, and to wait

1  until flood waters subside.  The United States may introduce this evidence through third-party

2  news outlets in the area, as well as its own witnesses.

3      The United States intends to introduce testimony by members of the Yuba County

4  Sheriff's Department, who investigated this accident.  The United States may also introduce

5  testimony by Robert Smith, a Nevada City resident, who was involved in a similar rafting

6  accident but survived with minor injuries.  Plaintiff alludes to Mr. Smith's accident in her

7  complaint.  Complaint at ¶17.

8                          **ARGUMENT AND AUTHORITIES**

9  **I.       THE STATUTORY AUTHORITY FOR A TRANSFER OF VENUE.**

10     A motion to transfer venue is governed by 28 U.S.C. § 1404(a), which allows a district

11  court, for the convenience of parties and witnesses, and in the interest of justice, to transfer any

12  civil action to any other district or division where it might have been brought.  The decision to

13  transfer venue lies within the Court's discretion, based on the facts of the particular case.  *Jones*

14  *v. GNC Franchising*, 211 F.3d 495, 498 (9th Cir. 2000).  In reviewing a motion to transfer, the

15  Court should consider (1) the plaintiff's choice of forum; (2) the parties' convenience; (3) the

16  witnesses' convenience; (4) ease of access to the evidence; (5) familiarity of each forum to the

17  applicable law; (6) the feasibility of consolidation with other claims; (7) any local interest in the

18  controversy; and (8) the relative court congestion and time to trial in each forum.  *Id.*

19     The moving party bears the burden of showing that the balance of conveniences weighs

20  heavily in favor of transfer in order to overcome the strong presumption in favor of the plaintiff's

21  choice of forum.  *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir.

22  1986).  But a plaintiff's choice of forum is entitled only to minimal consideration if the operative

23  facts have not occurred within the forum of original selection and that forum has no particular

24  interest in the parties or the subject matter of the litigation.  *Pacific Car & Foundry Co. v. Pence*,

25  403 F.2d 949, 954 (9th Cir. 1968).

26

27

28

1    **II.    THE RELEVANT FACTORS SUPPORT A TRANSFER OF VENUE.**

2        The location of the evidence in this case, especially this Court's lack of subpoena power

3    over potentially critical evidence in this case, support a transfer of venue to the Eastern District

4    of California.  Bailey's choice of this district is entitled to minimal weight, given that this forum

5    has no connection to any of the operative parties or facts of this case.

6        **A.    Bailey's Choice of This Forum Has Minimal Relevance.**

7        Ordinarily, a plaintiff's choice of a particular forum deserves considerable deference.

8    *Decker Coal Co.*, 805 F.2d at 843.  And given Bailey's assertion that she lives in this District,

9    venue is technically proper here under 28 U.S.C. § 1391(e).  But the Court should accord

10   Bailey's choice of venue minimal deference, for two reasons.  First, the operative facts did not

11   occur within this forum, and second, this forum has no particular interest in the parties or subject

12   matter of this litigation.  *See Pacific Car & Foundry Co.*, 403 F.2d at 954.

13       In this case, the operative facts – Mr. Bailey's raft trip and death, the Army Corps of

14   Engineers' maintenance of the Daguerre Dam, and any decisions made regarding signage or

15   other warnings in the area, all occurred in the Eastern District of California.  This forum has no

16   particular interest in the case, because the relevant Army Corps of Engineers office and

17   employees are in the Eastern District of California, the dam and river are there, the accident took

18   place there, and any future accidents that Bailey believes could be avoided would take place

19   there.  And while anyone may visit the Yuba River, it is the citizens of the Eastern District of

20   California who have the greatest stake in any dispute about its safety.

21       **B.    Other Relevant Factors Favor Transfer of Venue.**

22       Other factors that the Ninth Circuit has found relevant to a transfer of venue

23   determination supports transfer here.

24       **1.    Convenience of Parties and Witnesses.**

25       The parties' and witnesses' convenience favor a transfer of venue.  Though Bailey

26   resides in Martinez, all of the key party and non-party witnesses in this case reside in the Eastern

27   District of California.  The Army Corps of Engineers employees who oversee the Daguerre Dam

28   reside in the Eastern District of California, as do the sheriff's deputies who investigated the

1  accident, and all of the third-party witnesses to the accident.  These witnesses would have to

2  travel a considerable distance to appear at trial in this district.  And because Bailey will have to

3  travel to the Eastern District of California to take any depositions in this case regardless of

4  whether its venue is in this district or in the Eastern District, maintaining venue in this district is

5  no more convenient to her than transferring venue to the Eastern District.

6       Transferring venue to the Eastern District would not only be more convenient to the

7  United States, since the site of the accident, the witnesses, and any relevant documents are all

8  located there, it would also be more convenient to the Court if a trial of this case involved a site

9  visit to the scene of the accident.  While such a visit would involve a trip of over 120 miles each

10  way by this Court, a trip from Sacramento, California to the accident site is only about one third

11  the distance.[1]

     **2.    The Ease of Access to Evidence.**

13       Maintaining venue in this District significantly complicates both parties' access to

14  evidence, since the many relevant non-party witnesses in this case cannot be compelled to come

15  to this District for the purpose of discovery or trial.  At best, the Court might only be able to hear

16  their testimony by deposition, if at all.  The benefit to the Court (which is the trier of fact in this

17  case) of being able to observe the demeanor of live witnesses, and to ask them questions at trial,

18  is significant.

19       The following potential third-party witnesses in this case apparently reside outside the

20  subpoena power of this Court:

21     •   Pat Marble, then a maintenance employee at the Sycamore Ranch Campground,

22      refused to help the Baileys inflate their raft, which he described as a small, K-

23      Mart variety raft, because he thought the raft was unsafe and unsuited to the

24      prevailing conditions.  Marble warned the Baileys about the dam, the speed of the

25      water, and its temperature.  Marble also warned the Baileys against proceeding

26      without life vests.  Bailey told Marble that he knew about the Daguerre Dam, but

27

28     [1] Based on estimates from the Google Maps website "Directions" feature, of which the Court may take judicial notice.

1  intended to pull his raft out of the river before that point.  Svetich Decl., Exhibit

2  A.

3  •  Lewis Ashcraft, owner of the Sycamore Ranch Campground, warned the Baileys

4  about the dam, and about the danger of rafting on the river during flood

5  conditions.  Ashcraft told Bailey that the entire campground had been flooded the

6  previous week, and that it was the last safe place to take a raft out of the Yuba

7  River in order to avoid the dam downstream.  Ashcraft also asked if the Baileys

8  had life vests, and upon hearing that they did not, warned them against rafting on

9  the river.  *Id.*, Exhibit B.

10  •  Clay Swanson, campground manager at the Sycamore Ranch Campground, can

11  corroborate Marble's and Ashcraft's accounts, as he was present during their

12  conversations with the Baileys.  Swanson also warned the Baileys about rafting in

13  the Yuba River that day, and about the dam downstream.  *Id.*, Exhibits B, D.

14  •  Cary Jellison, a professional fishing guide, was probably the last person to see the

15  Baileys before they rafted over the Daguerre Dam.  Jellison noticed that the

16  Bailey's raft was unsuited to the conditions, that they had no control over the raft,

17  and that they were laughing and seemed to enjoy their lack of control over the

18  raft.  Jellison also noted that the Baileys were not wearing life vests, and that their

19  raft was very low in the water.  He remembers thinking that he would probably

20  read about them in the newspaper the next morning.  *Id.*, Exhibit C.

21  •  Bill Siler and Jason Whitehead, local deputy sheriffs, investigated the Bailey's

22  accident.

23  •  Various local news outlets can corroborate that two days before the Bailey's

24  accident, the Army Corps of Engineers released a press release warning against

25  any boating activity downstream of the Highway 20 overpass over the Yuba

26  River.

27  •  Robert Smith, alluded to in plaintiff's complaint, was involved in another

28  accident on the Daguerre Dam that day.  Because of the size of his raft and his use

1  of life vests, he and his companions escaped with only minor injuries.

2  The Court should transfer venue to the Eastern District of California to ensure the testimony of

3  these key witnesses at trial.

4          **3.**     **Local Interest in the Controversy.**

5        This District has little interest in adjudicating this controversy.  Though Mr. Bailey lived

6  in this district, his death and all the circumstances surrounding it took place in the Eastern

7  District of California.  The river and dam at issue in this case are located in the Eastern District

8  of California.  The Army Corps of Engineers employees who manage the Daguerre Dam are in

9  the Eastern District of California.  The weight of public interest in the safety, or alleged lack of

10  safety, of the Yuba River and Daguerre Dam resides in the Eastern District of California, not

11  here.

12                      **CONCLUSION**

13        The location of the relevant facts and evidence giving rise to this lawsuit, the ease of

14  access to evidence, the convenience of the witnesses and parties, and the public interest in this

15  case, all favor a transfer of venue to the Eastern District of California.  The Court should grant

16  this motion.

17                                          Respectfully submitted,

18                                          SCOTT N. SCHOOLS
19                                          United States Attorney

20

21  Dated: September 14, 2007                        /s/

22                                       _____
                                      ELLEN M. FITZGERALD
                                      Assistant United States Attorney

23

24

25

26

27

28