SCOTT N. SCHOOLS (SCSBN 9990)
United States Attorney
JOANN M. SWANSON (SBN 88143)
Chief, Civil Division
ELLEN M. FITZGERALD (NY 2408805)
Assistant United States Attorney
450 Golden Gate Avenue, 9th Floor
San Francisco, California 94102-3495
Telephone:   (415) 436-7241
Facsimile:    (415) 436-6748
Email:         ellen.fitzgerald@usdoj.gov

Attorneys for Defendant the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BRIGID BAILEY, individually as the Personal Administrator for the Estate of Joseph Paul Bailey, Deceased, and the Guardian Ad Litem for Samuel P. Bailey, Paul F, Bailey, and Meghan Bailey,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. C 07-2655 JSW<br>**E-FILING CASE**<br><br>**[PROPOSED] ORDER RE: DEFENDANT'S MOTION TO TRANSFER VENUE TO THE EASTERN DISTRICT OF CALIFORNIA**<br><br>Date:  November 9, 2007<br>Time:  9:00 am<br>Ctrm:  2, 17th Floor |

**INTRODUCTION**

This case comes before the Court on defendant United States of America's motion to transfer venue to the Eastern District of California. For the reasons stated below, defendant's motion is GRANTED.

This tort case, brought under the Federal Tort Claims Act, alleges wrongful death and negligence with respect to the death of James Bailey, plaintiff Brigid Bailey's husband, who died while rafting on the Yuba River near Grass Valley, California. Bailey claims that the Army Corps of Engineers failed adequately to warn her husband of the Daguerre Dam, which crosses the Yuba River. Bailey rafted over the Daguerre Dam and drowned.

**STATEMENT OF FACTS**

Plaintiff Brigid Bailey, was married to James Bailey when he died in a rafting accident on the Yuba River on May 29, 2005. Complaint at ¶1. The other male plaintiffs are the Baileys' sons, who survived the rafting accident. *Id*. at ¶9. The other female plaintiff is Bailey's stepdaughter, who was not present at the accident. *Id*. at ¶5. The Baileys allege that the Army Corps of Engineers' negligence caused the accident that killed Mr. Bailey because the Army Corps of Engineers failed to warn of the dangers posed by the Daguerre Dam sufficiently to prevent the Baileys from rafting over it. *Id*. at ¶18.

Bailey lives in Martinez, California, which is within the Northern District of California. Complaint at ¶1.

The Daguerre Dam crosses the Yuba River between Grass Valley and Marysville, California, in the Eastern District of California. Decedent James Bailey and his sons set out in a small raft at the Highway 20 bridge over the Yuba River, and floated downstream to the site of their accident at Daguerre Dam. *Id*. at 13.

**DISCUSSION**

**I.   THE STATUTORY AUTHORITY FOR A TRANSFER OF VENUE.**

A motion to transfer venue is governed by 28 U.S.C. § 1404(a), which allows a district court, for the convenience of parties and witnesses, and in the interest of justice, to transfer any civil action to any other district or division where it might have been brought. The decision to transfer venue lies within the Court's discretion, based on the facts of the particular case. *Jones v. GNC Franchising*, 211 F.3d 495, 498 (9th Cir. 2000). In reviewing a motion to transfer, the Court should consider (1) the plaintiff's choice of forum; (2) the parties' convenience; (3) the witnesses' convenience; (4) ease of access to the evidence; (5) familiarity of each forum to the applicable law; (6) the feasibility of consolidation with other claims; (7) any local interest in the controversy; and (8) the relative court congestion and time to trial in each forum. *Id*.

The moving party bears the burden of showing that the balance of conveniences weighs heavily in favor of transfer in order to overcome the strong presumption in favor of the plaintiff's choice of forum. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir.

1986). But a plaintiff's choice of forum is entitled only to minimal consideration if the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter of the litigation. *Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968).

## II.  THE RELEVANT FACTORS SUPPORT A TRANSFER OF VENUE.

The location of the evidence in this case, especially this Court's lack of subpoena power over potentially critical evidence in this case, support a transfer of venue to the Eastern District of California. Bailey's choice of this district is entitled to minimal weight, given that this forum has no connection to any of the operative parties or facts of this case.

### A.  Bailey's Choice of This Forum Has Minimal Relevance.

Ordinarily, a plaintiff's choice of a particular forum deserves considerable deference. *Decker Coal Co.*, 805 F.2d at 843. And given Bailey's assertion that she lives in this District, venue is technically proper here under 28 U.S.C. § 1391(e). But the Court should accord Bailey's choice of venue minimal deference, for two reasons. First, the operative facts did not occur within this forum, and second, this forum has no particular interest in the parties or subject matter of this litigation. *See Pacific Car & Foundry Co.*, 403 F.2d at 954.

In this case, the operative facts – Mr. Bailey's raft trip and death, the Army Corps of Engineers' maintenance of the Daguerre Dam, and any decisions made regarding signage or other warnings in the area, all occurred in the Eastern District of California. This forum has no particular interest in the case, because the relevant Army Corps of Engineers office and employees are in the Eastern District of California, the dam and river are there, the accident took place there, and any future accidents that Bailey believes could be avoided would take place there. And while anyone may visit the Yuba River, it is the citizens of the Eastern District of California who have the greatest stake in any dispute about its safety.

### B.  Other Relevant Factors Favor Transfer of Venue.

Other factors that the Ninth Circuit has found relevant to a transfer of venue determination supports transfer here.

1. **Convenience of Parties and Witnesses.**

The parties' and witnesses' convenience favor a transfer of venue. Though Bailey resides in Martinez, all of the key party and non-party witnesses in this case reside in the Eastern District of California. The Army Corps of Engineers employees who oversee the Daguerre Dam reside in the Eastern District of California, as do the sheriff's deputies who investigated the accident, and all of the third-party witnesses to the accident. These witnesses would have to travel a considerable distance to appear at trial in this district. And because Bailey will have to travel to the Eastern District of California to take any depositions in this case regardless of whether its venue is in this district or in the Eastern District, maintaining venue in this district is no more convenient to her than transferring venue to the Eastern District.

Transferring venue to the Eastern District would not only be more convenient to the United States, since the site of the accident, the witnesses, and any relevant documents are all located there, it would also be more convenient to the Court if a trial of this case involved a site visit to the scene of the accident. While such a visit would involve a trip of over 120 miles each way by this Court, a trip from Sacramento, California to the accident site is only about one third the distance.

2. **The Ease of Access to Evidence.**

Maintaining venue in this District significantly complicates both parties' access to evidence, since the many relevant non-party witnesses in this case cannot be compelled to come to this District for the purpose of discovery or trial. At best, the Court might only be able to hear their testimony by deposition, if at all. The benefit to the Court (which is the trier of fact in this case) of being able to observe the demeanor of live witnesses, and to ask them questions at trial, is significant.

The following potential third-party witnesses in this case apparently reside outside the subpoena power of this Court:

- Pat Marble, then a maintenance employee at the Sycamore Ranch Campground, refused to help the Baileys inflate their raft, which he described as a small, K-Mart variety raft, because it was unsafe and unsuited to the prevailing conditions.

>Marble warned the Baileys about the dam, the speed of the water, and its temperature. Marble also warned the Baileys against proceeding without life vests. Bailey told Marble that he knew about the Daguerre Dam, but intended to pull his raft out of the river before that point. Svetich Decl., Exhibit A.

- Lewis Ashcraft, owner of the Sycamore Ranch Campground, warned the Baileys about the dam, and about the danger of rafting on the river during flood conditions. Ashcraft told Bailey that the entire campground had been flooded the previous week, and that it was the last safe place to take a raft out of the Yuba River in order to avoid the dam downstream. Ashcraft also asked if the Baileys had life vests, and upon hearing that they did not, warned them against rafting on the river. *Id.*, Exhibit B.

- Clay Swanson, campground manager at the Sycamore Ranch Campground, can corroborate Marble's and Ashcraft's accounts, as he was present during their conversations with the Baileys. Swanson also warned the Baileys about rafting in the Yuba River that day, and about the dam downstream. *Id.*, Exhibits B, D.

- Cary Jellison, a professional fishing guide, was probably the last person to see the Baileys before they rafted over the Daguerre Dam. Jellison noticed that the Bailey's raft was unsuited to the conditions, that they had no control over the raft, and that they were laughing and seemed to enjoy their lack of control over the raft. Jellison also noted that the Baileys were not wearing life vests, and that their raft was very low in the water. He remembers thinking that he would probably read about them in the newspaper the next morning. *Id.*, Exhibit C.

### 3. Local Interest in the Controversy.

This District has little interest in adjudicating this controversy. Though Mr. Bailey lived in this district, his death and all the circumstances surrounding it took place in the Eastern District of California. The river and dam at issue in this case are located in the Eastern District of California. The Army Corps of Engineers employees who manage the Daguerre Dam are in the Eastern District of California. The weight of public interest in the safety, or alleged lack of

1  safety, of the Yuba River and Daguerre Dam resides in the Eastern District of California, not
2  here.

## CONCLUSION

The location of the relevant facts and evidence giving rise to this lawsuit, the ease of access to evidence, the convenience of the witnesses and parties, and the public interest in this case, all favor a transfer of venue to the Eastern District of California.  The Court therefore ORDERS that this case be transferred to the Eastern District of California.

DATED:

_____
HON. JEFFREY S. WHITE
United States District Judge